DEPARTMENT OF REVENUE, FINANCE & ADMINISTRATION CABINET, Commonwealth of Kentucky, Appellant

v.

ROANOKE CEMENT COMPANY, LLC, Appellee.

No. 2013–CA–000471–MR.

Court of Appeals of Kentucky.

Feb. 21, 2014.

Discretionary Review Denied by Supreme Court Oct. 15, 2014.

Kevin Branscum, Office of Legal Services for Revenue, Frankfort, KY, for Appellant.

R. Benjamin Crittenden, Frankfort, KY, for Appellee.

Before CAPERTON, COMBS, and THOMPSON, Judges.

## OPINION

COMBS, Judge:

The Department of Revenue, Finance and Administration Cabinet, appeals from an opinion and order of the Franklin Circuit Court affirming a final order of the Kentucky Board of Tax Appeals rendered in favor of the taxpayer. We affirm.

As part of the administrative proceedings undertaken below, the parties stipulated to the following facts: Roanoke Cement Company, LLC owns and operates a limestone quarry in Virginia; its principal place of business is in Norfolk, Virginia. During the period at issue in this appeal, March 31, 2007, through January 31, 2009, Roanoke Cement also owned and operated a limestone quarry in Salem, Kentucky. The Kentucky quarry produced limestone aggregate which Roanoke Cement sold to customers and transported through the interstate river systems of the central portion of the United States. Roanoke Cement sold approximately 99% of the limestone aggregate severed from its Kentucky quarry to out-of-state customers. In the majority of these transactions, the purchaser arranged for the transportation (most often by barge) of the limestone aggregate from Roanoke Cement's quarry. In those instances, title and risk of loss passed from Roanoke Cement to the purchaser at the time the limestone aggregate was loaded onto the barge at Roanoke Cement's quarry on the Cumberland River.

Pursuant to the provisions of Kentucky Revised Statute[s] (KRS) 143A.020, Roanoke Cement was required to pay mineral severance tax on the gross value of the limestone aggregate that it severed from its Kentucky quarry. This tax was duly remitted.

Pursuant to the provisions of KRS 143A.035, a credit is allowed against the mineral severance tax imposed where the limestone is "sold to a purchaser outside of this state" by a taxpayer "who sells in interstate commerce not less than sixty percent (60%)" of the limestone it severs. Roanoke Cement's sales were made almost exclusively to out-of-state purchasers for shipment through interstate river systems, and its sales rate of 99% far exceeded the "not less than 60%" portion of the statute. Therefore, Roanoke requested a refund of its overpaid taxes.

In a final ruling issued on November 19, 2009, the Department of Revenue denied the request. It concluded that Roanoke Cement was not entitled to the tax credit since the disputed sales of limestone aggregate had been consummated in Kentucky and Roanoke Cement did not sell at

least 60% of its limestone in "interstate commerce."

Once its request for a refund was denied, Roanoke Cement filed an appeal with the Kentucky Board of Tax Appeals. Upon its review, the Board concluded that the meaning of the statute was plain: the tax credit is available to offset the tax imposed upon the value of limestone sold to out-of-state purchasers—no matter where the sale is consummated—as long as the taxpayer sells 60% of its limestone in interstate commerce. The Board concluded that the vast majority of Roanoke Cement's sales were made in interstate commerce. In its order rendered August 25, 2011, the Board held that Roanoke Cement clearly met the statutory requirements for the tax credit under the stipulated facts and reversed the final ruling of the Department of Revenue. The Department of Revenue filed a petition for judicial review in Franklin Circuit Court.

In an opinion and order entered on January 14, 2013, the Franklin Circuit Court concluded that Roanoke Cement was indeed entitled to the refund that it sought. It affirmed the decision of the Kentucky Board of Tax Appeals. The court held that the statutory phrase "outside of this state" did not describe the location of the sale but modified the word *purchaser* instead. Additionally, it concluded that the vast majority of Roanoke Cement's sales were made in interstate commerce. This appeal followed.

On appeal, the Department of Revenue contends that the Franklin Circuit Court erred as a matter of law by concluding that Roanoke Cement was entitled to the credit allowed under the provisions of KRS 143A.035 against the severance tax imposed pursuant to 143A.020. The parties agree that this appeal concerns the construction and application of a statute and, consequently, that our review is to be conducted *de novo*. *See Bob Hook Chevrolet Isuzu, Inc. v. Commonwealth, Transp. Cabinet,* 983 S.W.2d 488 (Ky.1998).

■ The Department of Revenue contends that the tax credit provision, like a tax exemption statute, should be narrowly construed in favor of the Commonwealth. It asserts that the taxpayer has the burden of establishing its entitlement to the tax credit and must overcome the presumption that the taxing authority of the state has not been relinquished. While tax exemptions and tax credits operate differently, their effects are the same—resulting in a reduction in revenue. Consequently, we agree with the Department of Revenue's contention on this point.

■ Notwithstanding our agreement that the provisions of KRS 143A.035 must be strictly construed against the taxpayer, our primary objective is to determine and effectuate the legislature's intent. KRS 446.080(1); *Autozone, Inc. v. Brewer,* 127 S.W.3d 653, 655 (Ky.2004). While courts generally give deference to an agency's interpretation of the statutes that it is charged with administering, it is ultimately the court's responsibility to construe the provisions. *Delta Air Lines, Inc. v. Commonwealth, Revenue Cabinet,* 689 S.W.2d 14 (Ky.1985).

KRS 143A.035 provides as follows:

(1) A credit is hereby allowed against the tax imposed by this chapter on the gross value of limestone which is severed or processed within this state and sold to a purchaser outside of this state.

(2) The credit allowed in subsection (1) of this section shall be equal to the tax imposed by this chapter on the gross value of a similar quantity of severed or processed limestone valued as of the day the sale is made to a purchaser outside of this state.

(3) The credit allowed in this section shall extend only to a taxpayer who severs or processes limestone through the rip-rap construction aggregate or agricultural limestone stages, and who sells in interstate commerce not less than sixty percent (60%) of such stone. The credit shall not be allowed to a taxpayer who processes the limestone beyond the agricultural limestone stage.

The Department of Revenue argues that the circuit court erred by affirming the Board for two reasons. First, it contends that the circuit court erred by concluding that Roanoke Cement was eligible for a tax credit since Roanoke Cement's sales on the Cumberland River do not qualify as sales in interstate commerce as required by the provisions of KRS 143A.035(3). Second, it contends that even if Roanoke were eligible for the tax credit, the circuit court erred by concluding that the value of the credit could be based upon the specific transactions at issue because they did not qualify as sales "to a purchaser outside of this state" pursuant to the requirements of KRS 143A.035(1). We disagree with each of these assertions.

█ In its final ruling, the Department of Revenue disallowed the refund request primarily upon the basis that the statute authorizes a credit only to those taxpayers who sell not less than 60% of their severed limestone in interstate commerce. The Department of Revenue concluded that the phrase "in interstate commerce" meant that only those transactions that triggered the protections afforded by the Commerce Clause of the federal constitution were to be considered in establishing the taxpayer's eligibility for the tax credit. On appeal, the Department of Revenue argues that Roanoke Cement's transactions upon the Cumberland River did not implicate the traditional protections of the Commerce Clause since they were completed entirely within the Commonwealth. For support, the Department of Revenue relies upon the provisions of 103 Kentucky Administrative Regulation[s] (KAR) 30:190 Section 2(1). That regulation provides as follows:

A sale is not presumed to be made in interstate commerce if the purchaser or his representative receives physical possession of such property in this state. This is true notwithstanding the fact that the purchaser may after receiving physical possession of the property in this state transport or send the property out of the state for use outside of the state or for use in the conduct of interstate commerce.

Both the Board and the circuit court rejected this analysis, however. They noted that the regulation cited by the Department of Revenue pertains exclusively to Kentucky sales and use tax. The Board reasoned as follows:

[t]he requirement that a sale be consummated in Kentucky before sales tax is applied and owed, is to make sure that there is no undue burden on interstate commerce and to ensure that the person who bears the economic burden of the tax (purchaser) has a clear connection to the state before he is taxed. In the case of the severance tax, the out-of-state purchaser is not being taxed. Since the incidence of the tax is on the severer, we are only looking to the out-of-state purchaser to see whether the severer qualifies for a credit. Thus, the protections of the "consummated in this state" sales tax standard are not required for the administration of the severance tax nor are they applicable or useful to the Board in discerning the statutory language of the severance tax statutes.

Final Order at 2. Moreover, the regulation declares that its purpose is to "state generally the application of the Commerce

Clause of the Constitution of the United States to the Sales and Use Tax Law." 103 KAR 30:190 Section 1.

We agree that the severance tax imposed under the provisions of KRS 143A.020 is fundamentally different from sales and use tax and that it does not, under the circumstances under which it is imposed, implicate traditional Commerce Clause concerns. We also believe that the administrative regulation is not material to an analysis of the provisions of KRS 143A.035(3). The parties agree that 99% of Roanoke Cement's limestone is sold to out-of-state customers. It is beyond dispute that these sales affect the price and supply of limestone around this region of the country. Under any readily acceptable or reasonable understanding of the phrase, these transactions perforce constitute sales "in interstate commerce." Consequently, the circuit court did not err by concluding that the taxpayer was eligible for the credit provided by KRS 143A.035.

 Next, the Department of Revenue contends that even if Roanoke Cement were eligible for the tax credit, the circuit court erred by concluding that the amount of the credit could include the value of the severed limestone that Roanoke Cement sold along the Cumberland River. It contends that the limestone was not sold "to a purchaser outside of this state" pursuant to the requirements of KRS 143A.035(1).

In its order reversing the final ruling of the Department of Revenue, the Board relied upon our decision in *Revenue Cabinet v. Rohm and Haas Kentucky, Inc.*, 929 S.W.2d 741 (Ky.App.1996). In that case, we considered the provisions of KRS 136.070(3)(d) and KRS 141.120(8)(c). These statutes provide that a sale of tangible personal property is deemed to be in this state and taxable for Kentucky corporate income tax purposes if "[t]he property is delivered or shipped to a purchaser, other than the United States government, or to the designee of the purchaser within this state regardless of the f.o.b. point or other conditions of the sale." The question on appeal was whether the statutory phrase "within this state" modifies the word *delivered* or the word *purchaser*. We summarized the dispute as follows:

> If the phrase modifies the word "delivered" as the [Revenue Cabinet] contends, the dock sales involved herein are Kentucky sales for purposes of the corporate income tax statutes because they involved in-state deliveries. On the other hand, if the phrase "within this state" modifies the word "purchaser" as the taxpayer contends, then the dock sales are not Kentucky sales for purposes of the corporate income tax statutes since the products were delivered or shipped to an out-of-state purchaser.

*Id.* at 742.

After summarizing the interpretations of the uniform statute by appellate courts in several other jurisdictions, we dismissed as immaterial the fact that out-of-state customers picked up goods in Kentucky rather than having them delivered. We concluded that the phrase "within this state" was meant to modify *purchaser* since the mode of transportation seemed irrelevant to the purposes of the statute. The method of delivery would appear to be no more relevant to the policy underlying the tax credit provision now before us, and we see no reason to depart from the analysis applied in *Rohm and Haas Kentucky, Inc.* Whether the taxpayer is entitled to claim the tax credit does not depend upon the manner in which the limestone severed and processed in Kentucky reaches an out-of-state purchaser. Neither the board nor the circuit court erred by concluding that the phrase "outside of this state" was meant to modify the word *purchaser*.

The circuit court did not err by affirming the order of the Kentucky Board of Tax Appeals. Consequently, we affirm.

ALL CONCUR.