

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-21-00316-CV
_____

IN THE INTEREST OF W.G., A CHILD

On Appeal from the 316th District Court
Hutchinson County, Texas
Trial Court No. 44,415; Honorable James M. Mosley, Presiding

May 20, 2022

## MEMORANDUM OPINION

Before PIRTLE and PARKER and DOSS JJ.

Appellant, N.G., challenges the trial court's order terminating her parental rights to her child, W.G.[1]  Through one issue, N.G. contends the trial court erred in determining there was legally and factually sufficient evidence under the requisite standard to support

---

[1] To protect the privacy of the parties involved, we refer to them by their initials.  *See* TEX. FAM. CODE ANN. § 109.002(d).  *See also* TEX. R. APP. P. 9.8(b).  The parental rights of the potential fathers of the child were also terminated in the underlying proceeding. None of them are parties to this appeal.

its finding that termination of N.G.'s parental rights to W.G. was in the child's best interest. We will affirm.

BACKGROUND

N.G. is the mother of six-year-old W.G., a male child. The Texas Department of Family and Protective Services (the "Department") became involved with the family in July 2020 after it received a report of domestic violence in the home, some of which W.G. witnessed and at least one incident in which he was involved. The report noted that N.G. and her significant other, X.O., engaged in an argument regarding payment of rent and spanking W.G. The report indicates that N.G. stated that X.O. "threw her on the bed, climbed on top of her, and began to choke her." The report stated there had been "multiple incidents of violence" in the home and during one incident, W.G., then four years old, "attempted to intervene to protect his mother." At the hearing, the caseworker agreed that X.O. "pushed [W.G.] when he tried to protect his mother."

The report indicated that N.G. was aware of X.O.'s significant history with the Department, including validations for sexual and physical abuse, and of his extensive criminal history. Accordingly, N.G. was aware of X.O.'s violent tendencies but failed to protect W.G. from him despite the existence of a safety plan that was put in place. Instead, N.G. continued to reside with X.O. until his incarceration. She also remained in touch with him after he was placed in jail. The report also noted X.O.'s involvement in the "drug lifestyle," the parties' refusal to participate in voluntary services with the Department, and N.G.'s threats to remove W.G. from Texas to an unknown location. The record also notes N.G.'s intermittent use of marijuana. On September 2, 2020, the court granted the removal of W.G. from the care of N.G.

The trial court held a final hearing in this matter in September 2021 during which the caseworker for the Department and N.G. testified. The caseworker testified W.G. was removed from N.G.'s care following a report of issues in the home, including domestic violence. She testified N.G. failed to follow the safety plan put in place by continuing to associate with X.O. and by continuing a relationship with him. The caseworker also testified to numerous services N.G. failed to complete despite those services being made an order of the court and despite the necessity of completing those services to have W.G. returned to her care. The caseworker answered affirmatively when asked whether it was the Department's position that N.G. "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endangered the physical or emotional wellbeing of [W.G.]" and that N.G. "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangered the physical or emotional wellbeing of [W.G.]." She also answered affirmatively when asked whether it was the Department's position that N.G. "failed to comply with the provisions of a court order that specifically established the actions necessary for her to obtain the return of her child from the custody of the Department for not less than nine months as a result of the child's removal from the parent for abuse and neglect."

The caseworker also testified that in her opinion, termination of N.G.'s parental rights to W.G. was in the child's best interest. She noted that W.G. was placed in a foster home and that the foster family desired to adopt him. She said W.G. was "doing great" in that home. Conversely, N.G. testified she did not have a suitable home for W.G., she

3

did not have any income aside from the amount she received in disability benefits,[2] and she did not have a driver's license or a car and had not yet applied to receive food stamps in Texas.  She did not have a plan to care for W.G. in the event he was returned to her and testified only that she "just want[ed] him back."

Based on the Department's case, the trial court found clear and convincing evidence to support termination of N.G.'s parental rights on the following statutory grounds:

> (D) knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger[ed] the physical or emotional well-being of the child;
>
> (E) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endanger[ed] the physical or emotional well-being of the child; and
>
> (O) failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the [Department] for not less than nine months as a result of the child's removal from the parent under chapter 262 for the abuse or neglect of the child.

*See* TEX. FAM. CODE ANN. § 161.001(b)(1) (D), (E), and (O). The trial court also found that termination was in the child's best interest.  *Id.* at § 161.001(b)(2).

### APPLICABLE LAW

A parent's right to the "companionship, care, custody, and management" of his or her child is a constitutional interest "far more precious than any property right."  *In re Z.F.*, No. 07-21-00138-CV, 2021 Tex. App. LEXIS 9693, at *7 (Tex. App.—Amarillo Dec. 6,

---

[2] N.G. did testify that when she had W.G. in her care, he received benefits in the amount of approximately $784 per month, bringing her total benefits to about $1,500 per month.  She also testified that W.G. "had Medicaid."

4

2021, no pet.) (mem. op.) (citing *Santosky v. Kramer*, 455 U.S. 745, 758-59, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *In re M.S.*, 115 S.W.3d 534, 547 (Tex. 2003)). Consequently, we strictly scrutinize termination proceedings and strictly construe the involuntary termination statutes in favor of the parent. *In re Z.F.*, 2021 Tex. App. LEXIS 9693, at *7 (citing *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985)). However, "the rights of natural parents are not absolute" and "[t]he rights of parenthood are accorded only to those fit to accept the accompanying responsibilities." *In re Z.F.*, 2021 Tex. App. LEXIS 9693, at *7 (citing *In re A.V.*, 113 S.W.3d 355, 361 (Tex. 2003) (citing *In re J.W.T.*, 872 S.W.2d 189, 195 (Tex. 1994)). Recognizing that a parent may forfeit his or her parental rights by his or her acts or omissions, the primary focus of a termination suit is protection of the child's best interest. *In re Z.F.*, 2021 Tex. App. LEXIS 9693, at *7 (citation omitted).

The Texas Family Code permits a court to terminate the parent-child relationship if the Department establishes one or more acts or omissions enumerated under section 161.001(b)(1) and termination of that relationship is in the child's best interest. *Id.* at § 161.001(b)(2). *See Holley v. Adams*, 544 S.W.2d 367, 370 (Tex. 1976). The burden of proof is clear and convincing evidence. TEX. FAM. CODE ANN. § 161.206(a). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* at § 101.007.

Only one statutory ground is needed to support termination, though the trial court must also find that termination is in a child's best interest. *In re K.C.B.*, 280 S.W.3d 888, 894-95 (Tex. App.—Amarillo 2009, pet. denied). In reviewing a termination proceeding, the standard for sufficiency of the evidence is that discussed in *In re K.M.L.*, 443 S.W.3d

5

101, 112-13 (Tex. 2014). In reviewing a best-interest finding, appellate courts consider, among other evidence, the factors set forth in *Holley*. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976).

Pursuant to *In re N.G.*, 577 S.W.3d 230, 235-36 (Tex. 2019), this court must also review the trial court's findings under section 161.001(b)(1)(D) or (E) to determine if either finding is supported by clear and convincing evidence even when another ground for termination is sufficient because of the potential consequences for future terminations under subsection (M). *Id.* at 234. Subsection (M) provides for termination of parental rights to another child if the parent has previously had parental rights terminated based on a finding that the parent's conduct violated subsection (D) or (E). *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(M). An appellate court denies a parent a "meaningful appeal and eliminates the parent's only chance for review of a finding that will be binding as to parental rights to other children" if that court does not review a termination based on either of those grounds. *In re N.G.*, 577 S.W.3d at 235 (citing *In re S.K.A.*, 236 S.W.3d 875, 890 (Tex. App.—Texarkana 2007, pet. denied)).

SECTION 161.001(b)(1)(D)

Subsection (D) requires a showing that the environment in which the child was placed posed a danger to the child's physical or emotional health, and it permits termination based on a single act or omission by the parent. *In re M.M.*, 584 S.W.3d 885, 889-90 (Tex. App.—Amarillo 2019, pet. denied) (citing *In re J.A.S.*, No. 07-12-00150-CV, 2012 Tex. App. LEXIS 8087, at *14 (Tex. App.—Amarillo Sept. 25, 2012, no pet.) (mem. op.) (citing *In re R.D.*, 955 S.W.2d 364, 367 (Tex. App.—San Antonio 1997, pet. denied)). Subsection (D) concerns the child's living environment, rather than the parent's

6

conduct, though parental conduct may produce an endangering environment. *Jordan v. Dossey*, 325 S.W.3d 700, 721 (Tex. App.—Houston [1st Dist.] 2010, pet. denied). It is not necessary that the child's living environment directly threaten the child or that the child be injured, but the parent must at least be aware of the potential for danger to the child in such an environment and must have disregarded that risk. *In re S.M.L.*, 171 S.W.3d 472, 477 (Tex. App.—Houston [14th Dist.] 2005, no pet.). Illegal drug use and criminal activity support a conclusion that the child's surroundings endanger his or her physical or emotional well-being. *In re M.M.*, 584 S.W.3d at 890 (citing *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.)). The relevant time frame under this subsection is prior to the child's removal. *In re M.M.*, 584 S.W.3d at 890 (citing *In re O.R.F.*, 417 S.W.3d 24, 37 (Tex. App.—Texarkana 2013, pet. denied)).

SECTION 161.001(b)(1)(E)

Subsection (E) permits termination when clear and convincing evidence shows that the parent has engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the child's physical or emotional well-being. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(E). Under subsection (E), the relevant inquiry is whether evidence exists that the endangerment of the child's physical or emotional well-being was the direct result of the parent's conduct, including acts, omissions, and failures to act. *In re J.T.G.*, 121 S.W.3d at 125. Termination under subsection (E) must be based on more than a single act or omission. *In re M.M.*, 584 S.W.3d at 890. That is, a voluntary, deliberate, and conscious course of conduct by a parent is required. *Id.* (citation omitted). Thus, while both subsections (D) and (E) focus on endangerment, they differ regarding the source and proof of endangerment. *In re M.M.*, 584 S.W.3d at

7

890 (citing *In re S.M.L.,* 171 S.W.3d at 477). To support a finding of endangerment, the parent's conduct does not necessarily have to be directed at the child nor is the child required to actually suffer injury. *In re M.M.,* 584 S.W.3d at 890 (citing *Texas Dep't of Human Servs v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987) (reversing appellate court's holding that father's imprisonment did not endanger the emotional and physical well-being of a child)).

### SECTION 161.001(b)(1)(O)

Parental rights may be terminated under section 161.001(b)(1)(O) if the Department establishes that the child was removed because of abuse or neglect; the Department has been the permanent or temporary managing conservator for at least nine months; a court order specifically established the actions necessary for the parent to obtain the return of the child; and the parent failed to comply with that order. *See In re J.F.C.*, 96 S.W.3d 256, 278-79 (Tex. 2002). Additionally, termination under subsection (O) does not allow for consideration of excuses for noncompliance nor does it consider "substantial compliance" to be the same as completion. *See In re M.C.G.*, 329 S.W.3d 674, 675-76 (Tex. App.—Houston [14th Dist.] 2010, pet. denied).

### SECTION 161.001(b)(2) BEST INTEREST

Notwithstanding the sufficiency of the evidence to support termination under section 161.001(b)(1), we must also find clear and convincing evidence that termination of the parent-child relationship was in the best interest of W.G. TEX. FAM. CODE ANN. § 161.001(b)(2). Evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *See In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002).

When reviewing the legal sufficiency of the evidence in a termination case, the appellate court should look at all the evidence in the light most favorable to the trial court's finding "to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.F.C.*, 96 S.W.3d at 266. To give appropriate deference to the fact finder's conclusions, we assume that the fact finder resolved disputed facts in favor of its finding if a reasonable fact finder could do so. *Id.* We disregard all evidence that a reasonable fact finder could have disbelieved or found to have been not credible; however, we do not disregard undisputed facts. *Id.* Even evidence that does more than raise surmise or suspicion is not sufficient unless that evidence can produce a firm belief or conviction that the allegation is true. *In re K.M.L.*, 443 S.W.3d at 113. If, after conducting a legal sufficiency review, we determine that no reasonable fact finder could have formed a firm belief or conviction that the matter that must be proven was true, then the evidence is legally insufficient, and we must reverse. *Id.* (citing *In re J.F.C.*, 96 S.W.3d at 266).

In a factual sufficiency review, we must give due consideration to evidence that the fact finder could reasonably have found to be clear and convincing. *In re J.F.C.*, 96 S.W.3d at 266. We must determine whether the evidence is such that a fact finder could reasonably form a firm belief or conviction about the truth of the petitioner's allegations. *Id.* We must also consider whether disputed evidence is such that a reasonable fact finder could not have resolved the disputed evidence in favor of its finding. *Id.* If, considering the entire record, the disputed evidence that a reasonable fact finder could not have credited in favor of the finding is so significant that a fact finder could not

9

reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *Id.*

A determination of best interest necessitates a focus on the child, not the parent. *In re Z.F.*, 2021 Tex. App. LEXIS 9693, at *13 (citing *In re B.C.S.*, 479 S.W.3d 918, 927 (Tex. App.—El Paso 2015, no pet.)). Appellate courts examine the entire record to decide what is in the best interest of the child. *In re Z.F.*, 2021 Tex. App. LEXIS 9693, at *13 (citing *In re E.C.R.*, 402 S.W.3d 239, 250 (Tex. 2013)). There is a strong presumption that it is in the child's best interest to preserve the parent-child relationship. *In re Z.F.*, 2021 Tex. App. LEXIS 9693, at *13 (citing *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006)).

A non-exhaustive list of factors to consider in deciding best interest is set forth in section 263.307(b) of the Family Code. *See also Holley*, 544 S.W.2d at 371-72 (setting forth similar factors).[3] Those factors include the following:

> (1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of the harm to the child; (4) whether the child has been the victim of repeated harm after the initial report and intervention by the department; (5) whether the child is fearful of living in or returning to the child's home; (6) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others

---

[3] These factors include the following:

(1) the desires of the child;
(2) the present and future physical and emotional needs of the child;
(3) the present and future physical and emotional danger to the child;
(4) the parental abilities of the person seeking custody;
(5) the programs available to assist the person seeking custody in promoting the best interest of the child;
(6) the plans for the child by the individuals or agency seeking custody;
(7) the stability of the home or proposed placement;
(8) acts or omissions of the parent that may indicate the existing parent-child relationship is not appropriate; and
(9) any excuse for the parent's acts or omissions.

*Holley*, 544 S.W.2d at 371-72.

who have access to the child's home; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (9) whether the perpetrator of the harm to the child is identified; (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (12) whether the child's family demonstrates adequate parenting skills, including providing the child and other children under the family's care with: (A) minimally adequate health and nutritional care; (B) care, nurturance, and appropriate discipline consistent with the child's physical and psychological development; (C) guidance and supervision consistent with the child's safety; (D) a safe physical home environment; (E) protection from repeated exposure to violence even though the violence may not be directed at the child; and (F) an understanding of the child's needs and capabilities; and (13) whether an adequate social support system consisting of an extended family and friends is available to the child.

TEX. FAM. CODE ANN. § 263.307. "A best-interest finding does not require proof of any unique set of factors, nor does it limit proof to any specific factors." *In re T.L.E.*, 579 S.W.3d 616, 627 (Tex. App.—Houston [14th Dist.] 2019, pet. denied) (citations omitted).

### APPLICATION

N.G. does not challenge the sufficiency of the evidence supporting the trial court's finding that termination was appropriate on the above-noted grounds. If multiple predicate violations under section 161.001(b)(1) were found in the trial court, we will affirm based on any one ground because only one predicate violation under section 161.001(b)(1) is necessary to a termination judgment. *In re S.L.*, 421 S.W.3d 34, 37 (Tex. App.—Waco 2013, no pet.) (citations omitted). An unchallenged finding of a predicate violation is binding and will support the trial court's judgment, and we may affirm the termination on that finding and need not address the other grounds for termination. *Id.* (citation omitted). Because N.G. does not challenge the findings on any of the predicate grounds, those

11

findings are binding. Accordingly, we will not address the sufficiency of the evidence supporting the trial court's determination that termination of N.G.'s parental rights under each of the predicate grounds was proper but, evidence supporting those grounds may be considered in determining the sufficiency of the evidence supporting the trial court's best-interest finding. *In re E.A.F.*, 424 S.W.3d 742, 750 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) (citing *In re C.H.*, 89 S.W.3d at 28) (noting that the trial court's unchallenged predicate grounds are probative in the best interest determination).

We thus turn to our analysis of whether the record shows the trial court had sufficient evidence on which to base its best-interest finding. We find that it does.

On appeal, N.G. argues the evidence was insufficient to support the trial court's best-interest finding because she completed a number of the services the Department requested of her, and while she had many positive drug screens at various points throughout the case, "the drug tests were positive for marijuana and never for any other illegal substances." The Department contends the evidence was nevertheless sufficient.

At the time of the final hearing, W.G. was almost six years old. He has multiple special needs due to intellectual disability. He is non-verbal, requires speech therapy, and is not toilet trained. The caseworker testified that W.G. was placed in a foster home and that the foster family desired to adopt him. She said he was "doing great" in that home. N.G. admitted she had not asked about or been involved in the therapies W.G. is receiving.

Of great significance and concern to the Department was N.G.'s continued relationship with X.O. A child's exposure to domestic violence in the home is relevant

12

when considering best interest. *In re A.M.C.*, No. 07-18-00099-CV, 2018 Tex. App. LEXIS 5560, at *14 (Tex. App.—Amarillo July 20, 2018, no pet.) (mem. op.) (citing *In re B.R.*, No. 02-12-00137-CV, 2013 Tex. App. LEXIS 41, at *36 (Tex. App.—Fort Worth Jan. 4, 2013, pet. denied) (mem. op.)). "Repeated exposure to violence, even if the violence is not directed at the children, undermines the safety of the home environment" and supports a finding that termination of parental rights is in the child's best interest. *In re A.M.C.*, 2018 Tex. App. LEXIS 5560, at *14 (citing *In re A.M.Y.*, No. 04-15-00352-CV, 2015 Tex. App. LEXIS 10806, at *15 (Tex. App.—San Antonio Oct. 21, 2015, no pet.) (mem. op.)). W.G. was removed from the home following allegations of domestic violence between N.G. and X.O. During one incident, W.G. intervened in an attempt to protect his mother and X.O. pushed him. X.O. had an extensive history with the Department and had a significant criminal history, including multiple pending cases at the time W.G. was removed from N.G.'s care. N.G. testified she was aware of that history and admitted she did not adhere to the safety plan put in place to protect W.G. from X.O. While X.O. was incarcerated at the time of the final hearing and would likely continue to be imprisoned for a period of years, there was testimony that despite N.G.'s assurances otherwise, she continued to have a relationship with him that might continue well into the future. In fact, N.G. admitted she had spoken to the district attorney in an effort to try to "get him out of trouble."[4] The record indicates N.G. had a pattern of engaging in volatile relationships. But, despite her involvement in relationships involving domestic violence, including the one with X.O., N.G. failed to participate in the domestic violence support group required under the service plan. Thus, the trial court could have determined N.G.

---

[4] N.G. also said she made changes to her page on Facebook to indicate she was not in a relationship with X.O. This change was made after commencement of the final hearing when someone asked her to do so.

would continue to engage in a relationship with X.O. and would not adequately protect W.G. from domestic violence situations.

Moreover, according to N.G., she received social security disability benefits due to intellectual, reading, and writing deficiency, but was not employed. N.G. testified she did not have a suitable home for W.G., she did not have any income aside from the amount she received in disability benefits, and she did not have a driver's license or a car and had not yet applied to receive food stamps in Texas. She also admitted that none of her living situations throughout the pendency of the case would have been appropriate for W.G. The record shows that while she could have applied for suitable housing much earlier, she waited to do so until a week prior to the final hearing. She did not have a plan to care for W.G. in the event he was returned to her and did not have a plan to address his special needs. She testified only that she "just want[ed] him back." She said she desired W.G. to remain in his current placement while she continued to complete required services and attempted to obtain suitable housing for which she had applied. From this, the trial court could have concluded that N.G. had no real plan for W.G. in the event he was returned to her.

N.G. also failed to complete a number of her required services. A parent's performance under a service plan is also relevant to several of the *Holley* factors, including the emotional and physical danger to the child now and in the future, parental abilities, and stability. *In re S.A.M.*, No. 04-18-00607-CV, 2019 Tex. App. LEXIS 1020, at *16 (Tex. App.—San Antonio Feb. 13, 2019, pet. denied) (mem. op.) (citing *Holley*, 544 S.W.2d at 371-72). It is also relevant to some of the factors set out in section 263.307(b): (1) the willingness of the parent to seek out, accept, and complete counseling

services; (2) the willingness and ability of the parent to effect positive changes within a reasonable time; and (3) whether the parent demonstrates adequate parenting skills. *In re S.A.M.*, 2019 Tex. App. LEXIS 1020, at *16 (citing TEX. FAM. CODE ANN. § 263.307(b)(10); *id.* § 263.307(b)(11); *id.* § 263.307(b)(12)). Given the connection between a service plan and the *Holley* and statutory factors, a parent's actions or inactions with regard to the service plan is relevant to a child's best interest. *In re S.A.M.*, 2019 Tex. App. LEXIS 1020, at *16-17 (citing *In re A.C.B.*, 198 S.W.3d 294, 298 (Tex. App.—Amarillo 2006, no pet.); *In re S.B.*, 207 S.W.3d 877, 887-88 (Tex. App.—Fort Worth 2006, no pet.) (noting failure to comply with family service plan supports finding that termination is in best interest of child)). Here, the record shows N.G. engaged in some of her services, including counseling and about four hours out of twenty hours of parenting classes. However, she did not provide proof of completion of the parenting class hours at the final hearing because she "didn't think of it" and "overslept today." She also had many other excuses for failing to complete her other services including forgetting, having trouble connecting virtually, not having phone calls returned, and lack of transportation.[5] Thus, the record shows N.G. failed to complete parenting classes, attempted to attend only one of fourteen domestic violence support group sessions, stopped attending counseling sessions, and did not comply with the order to be assessed by Texas Panhandle Centers.

The caseworker also testified that N.G. did not follow the recommendations of her OSAR assessment to attend drug counseling. N.G. admitted she could not recall which services were recommended, what appointments she attended, or whether she

---

[5] The caseworker testified she frequently extended offers to provide transportation for N.G.

15

completed those services. She admitted to regular use of marijuana, had a positive test in May 2021, and told the caseworker she smoked marijuana in August 2021, less than one month prior to the final hearing. She also admitted she had pictures on social media concerning marijuana, but she removed "some of them" prior to trial because someone asked her to do so. The trial court could have reasonably determined that N.G. did not take any of the services required of her particularly seriously and that she would still engage in behaviors detrimental to W.G.

While the record does contain several positive acts by N.G. including: (1) completion of appropriate visits with W.G.;[6] (2) completion of some of her services,[7] including counseling sessions; (3) lack of use of marijuana for a short period prior to the final hearing;[8] (4) application for housing in Borger, Texas;[9] and (5) possible cessation of her relationship with X.O., we cannot say those aspects outweigh the others with regard to the best interest of W.G. *In re J.O.A.*, 283 S.W.3d 336, 346-47 (Tex. 2009) (providing that even significant evidence of improved conduct, especially in short duration, does not conclusively negate the probative value of a long history of drug use and irresponsible choices). We find the same to be true concerning N.G.'s contention on appeal that her

---

[6] N.G. admitted she had not requested additional visitation with W.G. and agreed that the Zoom visits with him did not last very long because W.G. was not always interested in the virtual visits. However, the record shows N.G. missed only three visits and each missed visit was due to technical issues connecting with the virtual visit.

[7] In his brief, counsel states N.G. completed four hours out of the required twenty hours of parenting classes. However, N.G. admitted she had not provided to the Department any of the paperwork concerning those completed hours.

[8] The caseworker testified that in August 2021, she sent a text message to N.G. to take her drug screen. She said N.G. told her she did not want to "because she had smoked weed."

[9] In addition to waiting until right before the final hearing to apply for housing, counsel also notes in his brief that N.G. received food stamps. However, N.G. testified she received food stamps from Colorado but only said she would "probably qualify" for food stamps in Texas.

16

inability to learn from her poor choices "is not entirely" in her control due to her intellectual disability. N.G.'s circumstances are unfortunate, and we certainly sympathize with her situation, but we cannot find this is a factor sufficiently significant to outweigh the other factors supporting the trial court's finding.

The trial court also had before it the opinions of several people involved in the case. The caseworker testified that in her opinion, termination of N.G.'s parental rights to W.G. was in the child's best interest. The CASA representative stated "[w]e feel it's in the child's best interest for PMC to be granted to the Department, to continue current placement, [N.G.'s] parental rights be terminated . . . ." The guardian ad litem for the child provided the same recommendation to the trial court.

Considering all of the factors set forth in section 263.307(b) of the Family Code and in *Holley* under the requisite standards, we find the evidence is legally and factually sufficient to support the trial court's best-interest finding. TEX. FAM. CODE ANN. § 263.307(b); *Holley*, 544 S.W.2d at 371-72. Accordingly, the trial court did not err in its determination and we overrule N.G.'s sole issue.

CONCLUSION

Having overruled N.G.'s sole appellate issue, we affirm the judgment of the trial court.

Patrick A. Pirtle
Justice

17