

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-25-00118-CV

IN THE INTEREST OF E.S.-A. AND A.S.-A., CHILDREN

On Appeal from the 108th District Court
Potter County, Texas
Trial Court No. 098234-E-FM, Honorable Timothy Pirtle, Presiding

August 18, 2025

## MEMORANDUM OPINION

Before QUINN, C.J., and DOSS and YARBROUGH, JJ.

Appellant, L. S., appeals from the trial court's order terminating her parental rights to her daughters, E.S.-A. and A.S.-A.[1]  By three issues, she maintains the evidence is legally and factually insufficient to support (1) she constructively abandoned her children, (2) she failed to complete her service plan, and (3) the best interest finding.  By her fourth

---

[1] To protect the privacy of the parties involved, we refer to them by their initials.  *See* TEX. FAM. CODE ANN. § 109.002(d).  *See also* TEX. R. APP. P. 9.8(b).  The father's rights were also terminated but he did not appeal.

L.S. has an older daughter with another man.  A termination proceeding involving that child was tried simultaneously with E.S.-A. and A.S.-A.'s case but did not result in termination of Mother's or that Father's parental rights.

issue, she asserts the drug test alleging cocaine use was unreliable. We reverse and remand.

## BACKGROUND

L.S. (Mother) and C.S. (Father One) have a daughter who was five at the time of the final hearing and who is placed with her maternal grandmother. Mother has two younger daughters, the subject of this appeal, with A.A. (Father Two), whom she lived with previously for more than four years.

In July 2023, the Texas Department of Family and Protective Services opened a Family-Based Safety Service case due to domestic violence between Mother and Father Two. A protective order was issued,[2] and a safety plan was implemented which prevented Father Two from being around his children. Several months later, Mother drove to a parking lot with her two younger daughters to meet Father Two and his new girlfriend to "fight" her. While there, Father Two used his vehicle to hit Mother's vehicle. No one was injured and there was minor damage caused. He was convicted of aggravated assault with a deadly weapon and sentenced to confinement for three years. He was also convicted of unauthorized use of a motor vehicle and punishment was assessed at twelve months. The incident triggered a referral with the Department and the younger children were removed from Mother's care. The two younger children were placed together in a foster home in Lubbock. The Department initiated termination proceedings and in October 2023, implemented a family service plan which Mother

---

[2] The protective order expired, and it is unknown if a new one had been imposed.

2

signed. The primary goal at that time was family reunification. At the final hearing, the caseworker testified the goal changed to unrelated adoption.

During the hearing, the trial court heard testimony from the caseworker, an investigator, all three parents, the maternal grandmother, and one of Mother's long-time friends. The focus of the testimony was that Mother and Father Two have a volatile relationship and Mother completed almost all of her services early in the case but failed to complete inpatient rehab three times to address her marihuana use.[3] Her failure resulted in suspension of her visitation. The trial court did not make any endangerment findings under section 161.001 (b)(1). After closing arguments, the trial court announced it would defer its ruling to review what the Department's counsel referred to as a "tough case." Counsel also remarked that Mother "has done well and worked services." Subsequently, the trial court found as follows:

- [Mother] constructively abandoned the children who had been in the Department's care for not less than six months after the Department made reasonable efforts to return the children, L.S. had not regularly visited or maintained contact, and did not demonstrate an ability to provide a safe environment; and

- [Mother] failed to comply with a court order specifying the actions necessary for her to obtain the return of the children who had been in the Department's care for not less than nine months and who had been removed for neglect under chapter 262 of the Family Code.

---

[3] Mother had one positive screen for cocaine but denied its use. Her fourth issue here addresses the unreliability of the results based on various studies. But as the Department argues, Mother waived that issue by not complaining in the trial court. *See* TEX. R. APP. P. 33.1(a).

3

TEX. FAM. CODE ANN. § 161.001(b)(1)(N), (O).[4] The trial court also found termination of Mother's parental rights was in the children's best interests. *Id.* at § 161.001(b)(2).

## APPLICABLE LAW

The Texas Family Code permits a court to terminate the relationship between a parent and a child if the Department establishes at least one of the predicate grounds under section 161.001(b)(1) of the Code *and* that termination of the relationship is in the best interest of the child. *See* § 161.001(b)(1), (2). *See also In re R.J.G.*, 681 S.W.3d 370, 377 (Tex. 2023); *Holley v. Adams*, 544 S.W.2d 367, 370 (Tex. 1976). The Due Process Clause of the United States Constitution and section 161.001 of the Texas Family Code require application of the heightened standard of clear and convincing evidence in cases involving involuntary termination of parental rights. *See In re E.N.C.*, 384 S.W.3d 796, 802 (Tex. 2012); *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002). *See also* § 161.206(a). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." § 101.007.

Only one statutory ground is needed to support termination though the trial court must also find that termination is in a child's best interest. *In re K.C.B.,* 280 S.W.3d 888, 894–95 (Tex. App.—Amarillo 2009, pet. denied). In reviewing a termination proceeding, the standard for sufficiency of the evidence is that discussed in *In re K.M.L.*, 443 S.W.3d

---

[4] Because the referring court did not make a finding under subsections (D) or (E), we need not address either of those grounds. *See In re N.G.*, 577 S.W.3d 230, 235–36 (Tex. 2019).

101, 112–13 (Tex. 2014). In reviewing a best-interest finding, appellate courts consider, among other evidence, the factors set forth in *Holley*. *Id.* at 116.

**STANDARD OF REVIEW**

The natural right existing between a parent and a child is of constitutional dimensions. *See Santosky v. Kramer*, 455 U.S. 745, 758–59, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982). A judgment terminating parental rights is "the 'death penalty' of civil cases." *In re D.T.*, 625 S.W.3d 62, 69 (Tex. 2021) (citation omitted). A court's decision to impose this penalty demands more than bureaucratic or mechanical box-checking. *In re R.J.G.*, 681 S.W.3d at 381. Thus, in seeking to permanently sever the parent-child relationship, the trial court must "observe fundamentally fair procedures." *In re E.R.*, 385 S.W.3d 552, 555 (Tex. 2012). Consequently, termination proceedings are strictly construed in favor of the parent. *Id.* at 563. Parental rights, however, are not absolute, and it is essential that the emotional and physical interests of a child not be sacrificed merely to preserve those rights. *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002).

In a legal sufficiency challenge, we credit evidence that supports the verdict if reasonable jurors could have done so and disregard contrary evidence unless reasonable jurors could not have done so. *In re K.M.L.*, 443 S.W.3d at 112–13. However, the reviewing court should not disregard undisputed facts that do not support the verdict to determine whether there is clear and convincing evidence. *Id.* at 113. In cases requiring clear and convincing evidence, even evidence that does more than raise surmise and suspicion will not suffice unless that evidence is capable of producing a firm belief or conviction that the allegation is true. *Id.* If, after conducting a legal sufficiency review, a

5

court determines that no reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true, then the evidence is legally insufficient. *Id.* (citing *In re J.F.C.*, 96 S.W.3d at 266).

In a factual sufficiency review, a court of appeals must give due consideration to evidence the trier of fact could reasonably have found to be clear and convincing. *In re J.F.C.*, 96 S.W.3d at 266 (citing *In re C.H.*, 89 S.W.3d at 25). We must determine whether the evidence is such that a trier of fact could reasonably form a firm belief or conviction about the truth of the Department's allegations. *In re J.F.C.*, 96 S.W.3d at 266. We consider whether disputed evidence is such that a reasonable trier of fact could not have resolved that disputed evidence in favor of its finding. If, in light of the entire record, the disputed evidence that a reasonable trier of fact could not have credited in favor of the finding is so significant that a trier of fact could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *Id.*

## PREDICATE GROUNDS

Assuming, without deciding, the Department provided clear and convincing evidence of predicate grounds (N), (O), or both, it did not demonstrate by that same standard that termination of Mother's parental rights to her two younger daughters was in the children's best interests. With an insufficient best-interest finding, the termination order fails. *In re K.C.B.*, 280 S.W.3d at 894–95.

## BEST-INTEREST ANALYSIS

The Department was required to prove by clear and convincing evidence that termination of Mother's parental rights to her two younger daughters was in their best

interests.  § 161.001(b)(2); *In re K.M.L.*, 443 S.W.3d at 116.  There is a strong presumption the best interest of a child will be served by preserving the parent-child relationship.  *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006).  Prompt and permanent placement of a child in a safe environment is also presumed to be in the child's best interest.  *See* § 263.307(a).  To assess the trial court's best-interest finding, we consider factors enumerated in the non-exhaustive list set forth in section 263.307(b) of the Family Code.

Additionally, the Supreme Court has set out other factors to consider when determining the best interest of a child.  *See Holley*, 544 S.W.2d at 371–72.  Those factors include (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individual seeking custody; (5) the programs available to assist the individual to promote the best interest of the child; (6) the plans for the child by the individual or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent.  *Id.*  The absence of evidence of one or more of these factors does not preclude a factfinder from reasonably forming a strong conviction or belief that termination is in the child's best interest.  *In re C.H.*, 89 S.W.3d at 27.

Evidence that supports one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest.  *See In re C.H.*, 89 S.W.3d at 28; *In re C.F.*, 134 S.W.3d 343, 354 (Tex. App.—Amarillo 2003, pet. denied).  *See also In re E.C.R.*, 402 S.W.3d 239, 249–50 (Tex. 2013).  The best-interest

7

analysis may consider circumstantial evidence, subjective factors, and the totality of the evidence as well as direct evidence. *See In re N.R.T.*, 338 S.W.3d 667, 677 (Tex. App.—Amarillo 2011, no pet.). Additionally, a child's need for permanence through the establishment of a "stable, permanent home" has been recognized as the paramount consideration in determining best interest. *See In re K.C.*, 219 S.W.3d 924, 931 (Tex. App.—Dallas 2007, no pet.).

It is significant to note the trial court did not include a predicate ground of endangerment in its termination order. Comments throughout trial described the case as "a close call," "this is a tough case," and the ad litem's recommendation for termination was accompanied by "it is close." As previously noted, counsel for the Department remarked Mother "has done well, and worked services."

All three children were initially placed in foster care in Lubbock. After the oldest child was moved to Amarillo and placed with her maternal grandmother the visits were virtual. All three siblings are bonded and the Department did not offer a plan for the two younger children to stay together if and when adopted.

A docket entry in the clerk's record indicates Mother and Father One's parental rights were not terminated as to the oldest daughter. The trial court, however, observed the situation between Mother and Father One as coparents is "very different" from that of Mother and Father Two.

Father One, described as the "non offending parent" for removal purposes, testified Mother is a "good mother" and the children are "clean, healthy, and well taken care of." He did not have any safety concerns about their daughter being in her home. He

8

disclosed methamphetamine use and occasional marihuana use. He admitted he does not take required drug screens. He excused his inability to work services due to his employment and lack of transportation.[5]

Father One did not have much contact with the daughter he and Mother share. He has a younger daughter with someone else which he has visitation with on the first, third, and fifth weekends of the month. When asked by the trial court if he could make time for his older daughter, he responded "I'll make the time to juggle in my daughter. It's always been that way." The court observed he had not worked services and showed no effort of wanting to make time for his older daughter. He expressed indifference at possible termination. He testified "I really ain't too much of a case pleader . . . I ain't really got no excuses. There [sic] were put there, I couldn't work them, because I had other things going on. Whatever you decide, that's what you decide. I'm grown enough to accept that." Despite his admitted drug use, failure to work services, and very little effort in visitation with his older daughter, the trial court did not terminate his parental rights.

Mother exercised poor judgment in continuing contact with Father Two during his imprisonment and describing him as an "amazing" father. When she was asked whether he was a "good choice" to have around the children, she answered "yes," but added they were no longer living together and would not physically be around each other on his release from prison. The Department did not counter with any evidence Mother intended to reconcile after Father Two's release. Even prior to termination, he had moved on from Mother and was in a new romantic relationship. The court's docket entry that Mother and

---

[5] He testified the Department denied him transportation every time he asked yet he managed to find transportation for work.

9

Father Two as coparents was problematic infers a continued relationship between them. That concern was extinguished and became moot due to termination of his rights and his failure to successfully appeal. Any connection between him and the two younger children has been permanently severed. But termination of Mother's rights to her younger children and separate placements in different cities severs the siblings' bond and negatively impacts their best interests.

Mother's inability to complete inpatient rehab weighs against her but at the time of the final hearing, she had five months of sobriety.[6] She had stable employment throughout the proceeding but was terminated approximately a week before the final hearing when she was unable to show for a shift due to a medical issue. She testified that while looking for new employment, she was earning money styling hair and selling her plasma.

The evidence shows a viable plan to keep the siblings together. Maternal grandmother testified she is willing to assume responsibility for all three children and has a safe and stable home with beds for all three children. She is in her late forties and is employed as a caregiver on Saturdays and Sundays. She has no criminal history or any mental health or drug issues. She does have some health issues but none so serious to prevent her from working or caring for the children. She has a support system in the form of relatives who are ready and willing to help with the children while she is at work. She has reliable transportation which is insured and can accommodate all the children. She

---

[6] She claimed her long period of sobriety made it difficult to be accepted in a rehab program. She testified she contacted six different facilities which deny treatment if sobriety extends beyond three months. The Department did not refute her testimony.

is protective of her grandchildren and testified she would not allow any unauthorized visitation.

The caseworker testified the maternal grandmother and the oldest child have an appropriate relationship and are bonded. She further testified the oldest child is bonded to her younger sisters. They enjoyed in-person visits when they were all in foster care in Lubbock. When the oldest child moved in with her grandmother in Amarillo, the visits continued, albeit virtually.

The caseworker testified the two younger sisters are "doing well" in foster care in Lubbock. No other specifics on their situation were provided. Nor was any testimony offered on a permanent placement for them or whether they would remain together. She testified the Department's goal for the oldest child was unrelated adoption which if accomplished had no assurances she would enjoy a relationship with her younger sisters.

The trial court's best-interest finding is harsh and irrevocably severs the siblings' bond. The Department offered no plan for the future of the younger children which would allow them to remain together.

The Department's original goal of reunification seems disingenuous when it is willing to sever the siblings' bond while maternal grandmother is willing and able to physically and emotionally care for all three children. A permanent separation among the children would not be in their best interests.[7]

---

[7] Maternal grandmother's home study was very positive overall but was denied due to the Department's concerns she had not obtained a pack and play and crib from Mother. She had also not obtained a doctor's note to clear her to provide for the girls. Background checks for back-up caregivers had not been returned. These concerns can be easily resolved.

Although evidence supporting a predicate ground for termination may constitute evidence to support a best-interest finding, it does not relieve the Department of the heightened burden of proof of clear and convincing evidence. *In re C.A.M.*, 633 S.W.3d 68, 75–76 (Tex. App.—Amarillo 2021, no pet.). Mother was commended for mostly completing her services except for her inability to complete inpatient rehab. She established sobriety for five months prior to the final hearing. Considering her relationship with her older daughter was not terminated, it strains credulity to sever the parent-child relationship with her youngest daughters and along with it, the siblings' bond.

The presumption of preserving the parent-child relationship should not be rebuttable by considering the parent's conduct prior to initiation of termination proceedings alone. *Id.* at 77. Rather, the presumption is rebutted when a parent acts contrary to a child's best interest. *Id.* Here, the Department argues the domestic violence between Mother and Father Two which led to removal of the children supports the best-interest finding. But by using Mother's original misconduct which led to removal, the Department set her up for failure and deprived her of an opportunity for redemption. *Id.*

Preserving the siblings' bond and safeguarding Mother's parental rights have to take precedence over a civil death penalty which irrevocably severs their relationship, especially when a family member is willing and able to provide a safe and permanent home. The presumption that the children's best interests are served by preserving the parent-child relationship was disregarded. Consideration of the *Holley* factors and the totality of the evidence show the trial court's best-interest finding is supported by legally, but not factually sufficient evidence. Issue three is sustained and issues one, two, and four are pretermitted.

12

## CONCLUSION

That portion of the trial court's order terminating L.S.'s parental rights to her two younger children is reversed and the cause is remanded for a new trial, including issuance of any temporary orders concerning conservatorship and support, as well as possession of and access to the children. Any proceedings on remand must commence within 180 days of the Court's mandate. TEX. R. APP. P. 28.4(c). The remainder of the order affecting the parental rights of A.A., the father who did not appeal, remains undisturbed.

Alex Yarbrough
Justice

Doss, J., dissenting.