

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-23-00083-CV
_____

IN THE INTEREST OF R.D., J.D., AND H.D., CHILDREN

On Appeal from County Court at Law No. 1
Randall County, Texas
Trial Court No. 81080L1, Honorable Jack M. Graham, Presiding

July 5, 2023

## MEMORANDUM OPINION

Before QUINN, C.J., and PARKER and YARBROUGH, JJ.

Pending before this Court is a motion to withdraw supported by a brief filed pursuant to *Anders v. California*.[1] Appellant, K.D., appeals from the trial court's order terminating her parental rights to her three children, R.D., J.D., and H.D.[2] We affirm the

---

[1] *Anders v. California*, 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967). The procedures set forth in *Anders*, pertaining to a non-meritorious appeal of a criminal conviction, are applicable to the appeal of an order terminating parental rights. *See In re A.W.T.*, 61 S.W.3d 87, 88 (Tex. App.—Amarillo 2001, no pet.). The brief filed in this appeal meets the requirements of *Anders* by presenting a professional evaluation of the record and demonstrating why there are no arguable grounds for reversal of the trial court's termination order.

[2] To protect the privacy of the parent and her children, we refer to them by their initials. *See* TEX. FAM. CODE ANN. § 109.002(d). *See also* TEX. R. APP. P. 9.8(b). R.D.'s alleged father, who could not be located, had his rights terminated and is not a party to this appeal. J.D. and H.D.'s father signed an affidavit of relinquishment and did not pursue an appeal.

*Order of Termination* but defer ruling on counsel's motion to withdraw. *See In re P.M.*, 520 S.W.3d 25, 27 (Tex. 2016) (per curiam).

In support of his motion to withdraw, counsel certifies he has conducted a conscientious examination of the record, and in his opinion, the record reflects no potentially plausible basis to support an appeal. *In re D.A.S.*, 973 S.W.2d 296, 297 (Tex. 1998). Counsel has demonstrated he has complied with the requirements of *Anders* by (1) providing a copy of the brief to K.D. and (2) notifying her of the right to file a pro se response if she desired to do so. *Id.* By letter, this Court also granted K.D. an opportunity to exercise her right to file a response to counsel's brief, should she be so inclined. She did not file a response. The Department notified this Court it would not file a response unless specifically requested to do so. No such request was made.

## BACKGROUND

Mother and Father have been married approximately eleven years and are the biological parents of a son, J.D., and a daughter, H.D. Mother is the biological parent of R.D., the eldest child.[3]

Mother and Father have a history with the Department involving investigations in 2011, 2013, 2014, and 2016. The 2016 investigation resulted in removal of the children; however, they were returned to their parents. Both parents have a criminal history involving assaults.

---

[3] Termination of Mother's parental rights to a fourth child, T.M., who has a different biological father, was severed from the underlying proceeding and a continuance was granted in the severed case.

Between January 28, 2022, and February 21, 2022, the Department received four reports of neglectful supervision. Some of the more serious allegations included domestic violence, drug and alcohol abuse, drug sales, physical abuse of R.D., and threats by Father against the family with a gun. Following emergency removal, J.D. and H.D. were placed with their paternal grandmother and R.D. was placed in a group home. The Department initiated termination proceedings on February 23, 2022.

Numerous witnesses testified at the final hearing in support of the predicate grounds and the trial court's best interest finding. Regarding best interests, a caseworker testified the children expressed a desire to live with their paternal grandmother. Although R.D. was living in a group home, she wanted to live with her grandmother until she graduates and attends college. Long term plans for J.D. and H.D. included residing with their grandmother. The caseworker testified they "love living there, and they feel safe there," and expressed that neither Mother nor Father had the parental abilities to care for the children. He was concerned because the children had already been removed in a prior case and reunified with their parents without any mitigation of the reasons for removal. At the conclusion of the testimony, the children's attorney ad litem and CASA representative both recommended that termination of parental rights was in the children's best interests. Subsequent to the hearing, the trial court signed an order terminating K.D.'s parental rights on the following grounds:

(1) knowingly placed or knowingly allowed her children to remain in conditions or surroundings which endangered their physical or emotional well-being;

(2) engaged in conduct or knowingly placed her children with persons who engaged in conduct which endangered their physical or emotional well-being; and

3

(3) failed to comply with the provisions of a court order that specifically established the actions necessary for her to obtain the children's return who had been in the permanent or temporary managing conservatorship of the Department for not less than nine months as a result of the children's removal from the parent under chapter 262 for abuse or neglect.

The trial court also found termination of K.D.'s parental rights was in her children's best interests. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (O), (b)(2).

## APPLICABLE LAW

The Texas Family Code permits a court to terminate the parent-child relationship if the Department establishes one or more acts or omissions enumerated under section 161.001(b)(1) and termination of that relationship is in the child's best interest. *See* TEX. FAM. CODE ANN. § 161.001(b)(1), (2). *See also Holley v. Adams*, 544 S.W.2d 367, 370 (Tex. 1976). The burden of proof is clear and convincing evidence. § 161.206(a). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." § 101.007.

Only one statutory ground is needed to support termination though the trial court must also find that termination is in a child's best interest. *In re K.C.B.*, 280 S.W.3d 888, 894–95 (Tex. App.—Amarillo 2009, pet. denied). In reviewing a termination proceeding, the standard for sufficiency of the evidence is that discussed in *In re K.M.L.*, 443 S.W.3d

101, 112–13 (Tex. 2014). In reviewing a best interest finding, appellate courts consider, among other evidence, the factors set forth in *Holley*, 544 S.W.2d at 371–72.[4]

There is a strong presumption the best interest of the child will be served by preserving the parent-child relationship. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). Prompt and permanent placement of the child in a safe environment is also presumed to be in the child's best interest. *See* § 263.307(a). To assess the trial court's best interest finding, we consider factors enumerated in the non-exhaustive list set forth in section 263.307(b) of the Family Code. One of those factors is providing the child with a safe physical home environment. § 263.307(b)(12)(D). Additionally, the Supreme Court has set out other factors to consider when determining the best interest of a child. *See* n.4 *supra*.

Evidence that supports one or more statutory grounds for termination may also constitute evidence illustrating termination is in the child's best interest. *See In re C.H.*, 89 S.W.3d at 28. *See also In re E.C.R.*, 402 S.W.3d 239, 249–50 (Tex. 2013). The best interest analysis may consider circumstantial evidence, subjective factors, and the totality of the evidence as well as direct evidence. *See In re N.R.T.*, 338 S.W.3d 667, 677 (Tex. App.—Amarillo 2011, no pet.). Additionally, a child's need for permanence through the establishment of a "stable, permanent home" has been recognized as the paramount

---

[4] Those factors include: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individual seeking custody; (5) the programs available to assist the individual to promote the best interest of the child; (6) the plans for the child by the individual or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. The absence of evidence of one or more of these factors does not preclude a fact finder from reasonably forming a strong conviction or belief that termination is in the child's best interest. *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002).

consideration in determining best interest. *See In re I.O.*, 645 S.W.3d 895, 904 (Tex. App.—Amarillo 2022, no pet.).

## ANALYSIS

By the *Anders* brief, counsel thoroughly reviews the evidence presented to support all statutory grounds for termination as well as the best interest finding and concludes there are no meritorious issues to present on appeal. He thoroughly addresses and details the sufficiency of the evidence to support the trial court's endangerment findings. *See In re N.G.*, 577 S.W.3d 230, 235–36 (Tex. 2019). *See also In re P.S.*, No. 07-22-00167-CV, 2022 Tex. App. LEXIS 6124, at *3 n.2 (Tex. App.—Amarillo Aug. 19, 2022, pet. denied) (mem. op.); *In re R.M.*, No. 07-22-00108-CV, 2022 Tex. App. LEXIS 6398, at *2 (Tex. App.—Amarillo Aug. 25, 2022, no pet.) (mem. op.). *But see In re E.K.*, 594 S.W.3d 435, 438 n.4 (Tex. App.—Waco July 31, 2019, pet. denied) (mem. op.) (Gray, C.J. concurring) (declining to impose the holding in *In re N.G.* to an *Anders* termination appeal "until the Supreme Court of Texas makes it clear that *N.G.* applies to this type of appeal"). *See also In re E.K.*, 608 S.W.3d 815, 815 (Tex. 2020) (Green, J. concurring in denial of petition for review).

We have independently examined the entire record to determine whether there are any non-frivolous issues which might support the appeal. *See Penson v. Ohio*, 488 U.S. 75, 80, 109 S. Ct. 346, 102 L. Ed. 2d 300 (1988); *In re Schulman*, 252 S.W.3d at 409; *Stafford v. State*, 813 S.W.2d 503, 511 (Tex. Crim. App. 1991). We have found no such issues. *See Gainous v. State*, 436 S.W.2d 137, 138 (Tex. Crim. App. 1969). After

6

reviewing the record and counsel's brief, we agree with counsel there is no plausible basis for reversal.

The Supreme Court directs this Court to review the trial court's findings under section 161.001(b)(1)(D) or (E) to determine if either finding is supported by clear and convincing evidence even when another ground for termination is sufficient because of the potential consequences for future terminations under subsection (M). *In re N.G.* 577 S.W.3d at 234. Subsection (M) provides for termination of parental rights to another child if the parent has previously had parental rights terminated based on a finding the parent's conduct violated subsection (D) or (E). *See* § 161.001(b)(1)(M). An appellate court deprives a parent of a "meaningful appeal and eliminates the parent's only chance for review of a finding that will be binding as to parental rights to other children" if that court does not review a termination based upon either of those grounds. *In re N.G.*, 577 S.W.3d at 235 (citing *In re S.K.A.* 236 S.W.3d 875, 890 (Tex. App.—Texarkana 2007, pet. denied)).

Subsection (D) requires a showing that the environment in which the child was placed posed a danger to the child's physical or emotional health, and it permits termination based on a single act or omission by the parent. *In re M.M.*, 584 S.W.3d 885, 889–90 (Tex. App.—Amarillo 2019, pet. denied) (citing *In re J.A.S.*, No. 07-12-00150-CV, 2012 Tex. App. LEXIS 8087, at *14 (Tex. App.—Amarillo Sept. 25, 2012, no pet.) (mem. op.)). Subsection (D) concerns the child's living environment, rather than the parent's conduct, though parental conduct may produce an endangering environment. *In re W.G.*, No. 07-21-00316-CV, 2022 Tex. App. LEXIS 3468, at *7 (Tex. App.—Amarillo May 20, 2022, pet. denied) (mem. op.). It is not necessary the child's living environment directly

threaten the child or that the child be injured, but the parent must at least be aware of the potential for danger to the child in such an environment and must have disregarded that risk. *Id.*

Subsection (E) permits termination when clear and convincing evidence shows a parent has engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the child's physical or emotional well-being. *See* § 161.001(b)(1)(E). Under subsection (E), the relevant inquiry is whether evidence exists that the endangerment of the child's physical or emotional well-being was the direct result of the parent's conduct, including acts, omissions, and failures to act. *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Amarillo 2003, no pet.). Termination under subsection (E) must be based on more than a single act or omission. *In re M.M.*, 584 S.W.3d at 890. That is, a voluntary, deliberate, and conscious course of conduct by a parent is required. *Id.* Thus, while both subsections (D) and (E) focus on endangerment, they differ regarding the source and proof of endangerment. *In re M.M.*, 584 S.W.3d at 890 (citing *In re S.M.L.*, 171 S.W.3d at 477). To support a finding of endangerment, the parent's conduct does not necessarily have to be directed at the child nor is the child required to actually suffer injury. *In re M.M.*, 584 S.W.3d at 890.

Several witnesses for the Department testified to the parents' lack of cooperation and Father's threats against one of their investigators. One investigator testified to the incidents which resulted in the four separate reports of neglectful supervision. A school liaison officer had gone to the home to investigate the children's poor attendance at school, but no one answered the door. The investigator also testified R.D. was choked by her stepfather when she intervened in an incident of domestic violence between him

8

and her mother. J.D. made an outcry of domestic violence in the home. He reported his father pulled a gun on the family. According to the investigator, Mother cussed at the children and threatened "to let CPS take them," as well as threatening to shoot R.D. or cut her hands off "if she messed with her gun again."

The children's paternal grandmother made allegations of abuse and neglect by Mother against the children which triggered an interview with the coordinator for Women Against Violence (WAV). The coordinator testified she interviewed Mother, and she denied any domestic violence, drug use, possession of weapons, or abuse and neglect of the children. She claimed the allegations made by her mother-in-law were lies. Her denials prevented her from being accepted into the WAV program.

A counselor, who had previously worked with the family during an earlier investigation, testified R.D. had been evaluated and found to be suffering from emotional abuse and had a history of self-injurious behavior. She had witnessed domestic violence in the home and believed her mother was unable to keep her and her siblings safe. The counselor testified R.D. expressed being able to live without her mother because she "doesn't care about me," "[s]he can just be a druggie." R.D. told the counselor her mother had used marihuana and methamphetamine in the home and garage. She wrote a note to her mother which the counselor read at the hearing: it recited "mom, you need to stop picking drugs and abusive husbands over your children."

During the hearing, R.D. was permitted to read a different letter she had written to her mother. The letter provided as follows:

9

I feel sorry for you because you chose drugs and an abuser over us. And now we have to grow up without you. But we have to live with the fact that you will never change, like you said you would. I wish you would have had a better experience with a relationship, and your kids. You raised me without a father. I wanted you to stay the way you were before, but you didn't. I will always love you, but I'm so disappointed in you. And how this all turned out. But in spite of it all, we're all going to be okay. I love you.

A caseworker testified that Mother was employed but could not provide a safe home for the children if Father continued to live in the home. Mother did not maintain a drug-free lifestyle. Throughout the case, she attended only one drug screening and did not show for fourteen appointments which the Department presumed as positive results. The caseworker concluded Mother had not mitigated any of the conditions that resulted in removal of the children. She continued to share a home with Father and did not intend to leave him.

The caseworker testified J.D. had reported having nightmares of his father "going to shoot them up." This caused the caseworker concern if Mother continued her relationship with Father. He testified Mother did not have the capacity to keep her children safe.

Mother testified in her own defense. She denied any domestic violence in the home or any abuse against R.D. by her stepfather. She claimed she only became aware that R.D. feared her stepfather during the testimony at the final hearing. She also denied ever threatening to shoot R.D. or cut her hands off.

Mother denied Father had ever abused her and blamed herself for his prior family violence offense. She admitted she went to jail in 2013 for assaulting him but blamed

10

hormones from her pregnancy. She also admitted they had disagreements and when asked if she was dedicated to him, she answered, "[y]es."

The evidence established a pattern by Mother of knowingly engaging in conduct or knowingly placing her children with Father who also engaged in conduct which endangered their physical or emotional well-being. There was clear and convincing evidence of domestic violence, drug use, threats with a gun, and physical and emotional abuse of the children to support termination under subsection (E). *See In re L.G.*, 596 S.W.3d 778, 781 (Tex. 2020) (per curiam) (finding error in the appellate court's failure to detail its analysis of the trial court's endangerment findings).

## CONCLUSION

The trial court's *Order of Termination* is affirmed. We take no action on counsel's motion to withdraw but call counsel's attention to the continuing duty of representation through the exhaustion of proceedings, which may include the filing of a petition for review. *In re P.M.*, 520 S.W.3d at 27.


Alex L. Yarbrough
Justice